UNITED STATES DISTRICT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

INTERNATIONAL ACTION CENTER,

                               Plaintiff,

     -against-

CITY OF NEW YORK,

                              Defendant.

------------------------------------------------------------------------ x

**DEFENDANT'S STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1**

05 Civ 2880 (SHS)

       Defendant, the City of New submits this statement pursuant to Local Civil Rule 56.1 in support of its motion for summary judgment. Defendant submits that there is no genuine issue to be tried as to the following material facts.

       1.    New York City Administrative Code (hereinafter Admin. Code) §10-110 provides the statutory basis for the issuance of parade permits.

       2.    The New York City Police Department (hereinafter the Department) has specific guidelines and procedures for the processing of applications for parade permits: "Rules for Processions and Parades." See 38 Rules of the City of New York (RCNY) §19-01 et seq (Parade Regulations).

       3.    Parades, which are defined by the Parade Regulations as moving events on City streets, require a parade permit. 38 RCNY §19-02 (a).

       4.    The Department issued proposed new Parade Regulations in 2001 and a public hearing was held on them on December 1, 2001. A number of persons testified at the hearing, including a representative from the Center for Constitutional Rights.

5. The Parade Regulations were issued on June 27, 2001 pursuant to the City Administrative Procedure Act (CAPA).

**Processing Parade Permits**

6. The Investigation Review Section of the Chief of Department's Office processes applications and issues parade permits for parades with a thousand or more participants and for parades on Fifth Avenue in Manhattan.

7. Each applicant fills out an "Application for a Parade Permit" that asks the applicant to provide the purpose of the parade and the character of the organization seeking the permit (social, political, etc.). The Police Department does not inquire any further into the applicant's background or purpose in seeking the permit or consider the speech or nature of the parade, or of the applicant or participants.

8. An application for a permit to conduct a parade along Fifth Avenue is filed in the Chief of Department's Office and then referred to the Police Department Borough Area Command (either Manhattan South, Manhattan North or both). The Borough Area Command considers the logistics of the parade – including issues such as traffic, other public safety concerns, police availability, police hours necessary, competing applications etc.

9. In the absence of an operational impediment, the Police Department will grant an applicant a parade permit for the date, time and location sought. However, if there is an operational problem, including a conflict with another event on the requested parade route, traffic concerns, security problems, or interference with proper fire, police or ambulance service, then an alternative time and route is suggested to the applicant pursuant to 38 RCNY §19-04(d).

**Fifth Avenue Parades**

10.     Fifth Avenue parades are permitted only on weekends and holidays except for the St. Patrick's Day and Columbus Day parades which are permitted on weekdays pursuant to Admin. Code §10-110(b)(3).

11.     38 RCNY §19-04(d) (viii) (the Rule) provides that a parade permit application will be disapproved under Section 10-110 of the Administrative Code if:

> The application seeks to hold a parade on Fifth Avenue in the borough of Manhattan, unless the parade was held at that location prior to the promulgation of these rules.

12.     This Rule, prohibiting "new Fifth Avenue Parades", codified existing Police Department policy and practice.  City records confirm that it has been the City's policy since 1971 not to permit any Fifth Avenue parades other than the traditional ones permitted before that year.

13.     In 1955 there were a total of 10 permitted Fifth Avenue parades.  In 1965 there were 15 Fifth Avenue parades. In 1969 there were 18 Fifth Avenue parades.  The Police Department determined in April 1970 that it would not issue permits for new Saturday Fifth Avenue parades and existing Sunday Fifth Avenue parades would be limited to a segment of Fifth Avenue.

14.     By 1971 the City policy was that there would be no new Fifth Avenue parades at all.  A review of parade permits issued in 1976 found that of the City's then existing eighteen major parades, fifteen were on Fifth Avenue.

15.     The reason underlying the adoption of the policy prohibiting new parades along Fifth Avenue was the over-saturation of such events in one of the most congested sections of the City--midtown Manhattan.

16. In enforcing the no new Fifth Avenue parade policy, the Department actively encourages applicants to conduct their parades on other streets and in other boroughs. Currently ten parades take place on Madison Avenue and four on Sixth Avenue.

17. There are fifteen large annual permitted parades on Fifth Avenue– more than on any other Avenue or thoroughfare in the City. Since 1971, and before the adoption of 38 RCNY §19-04(d)(viii), the City had only allowed four new large annual parades on Fifth Avenue.

18. The last "new" Fifth Avenue parade permitted was the Heritage of Pride Parade in 1984, twenty-one years ago.

19. Besides these large annual events the Police Department has permitted a number of small groups to have annual events that utilize Fifth Avenue for only a short route.

20. Specifically, the Cornell University "Big Red" Marching Band marches biennially in November on Fifth Avenue from 50th to 44th Street.

21. Since at least 1965 the Police Department Holy Name Society has marched along Fifth Avenue from 55th Street to 47th Street.

22. Also, since 1994 the Auxiliary Police Benevolent Association has been conducting alternate marches on Fifth Avenue. In April of one year it marches along two blocks on Fifth Avenue into St. Patrick's Cathedral and then the next year marches two blocks on Fifth Avenue to Temple Emmanue-El. .

23. At least since 1998 the City has not permitted a new group to hold a Fifth Avenue parade. The only exceptions were events authorized by permission of the Mayor's Office pursuant to Admin. Code §10-110(a)(4).

24. Since 1998 twenty-eight groups applied for and were denied Fifth Avenue parades.

25. Admin. Code §10-110(a)(4) provides that the Mayor may permit an occasion of extraordinary public interest that is not annual or customary on any City street.. The kinds of events which have been allowed by Mayors under the authority of this section have included ticker tape parades on Lower Broadway for the World Series winning Yankees, Nelson Mandela and the Pope.

26. The Olympic Torch Relay in 2004 and a massive protest march against the Republican National Convention in 2004 have been permitted on Fifth Avenue pursuant to the exception in Admin. Code §10-110(a)(4).

27. The Department intends on seeking an amendment to the Rule prohibiting new Fifth Avenue parades only between 15th street north to 114th Street. That is the Department will allow parades on southern Fifth avenue between 14th Street and Washington Square Park and on northern Fifth Avenue between 115th Street and 133rd Street.

 **Plaintiff's Applications**

28. On April 7, 2005 Plaintiff filed an application for a permit for a parade on May 1, 2005. Plaintiff wanted a permit to authorize a march which would have begun at Union Square and proceeded to Tompkins Square Park where it would have disbursed. Part of its proposed route was on Fifth Avenue.

29. Police personnel from Manhattan South had a meeting with representatives of Plaintiff on Tuesday April 19, 2005. Originally Plaintiff was informed that the Department did not think that a permit for a parade on May 1, 2005 could be issued because of

the number of other events scheduled for that date and because of other traffic closures in Manhattan.

30.     During that meeting Plaintiff was offered several alternatives, including a parade on another date, and a stationery rally in Union Square Park.  In addition, the Department offered to attempt to persuade United Peace and Justice to allow Plaintiff to join its May 1, 2005 march to and event in Central Park.  Plaintiff rejected all three alternatives.

31.     A written denial of Plaintiff's requested parade permit was issued on April 26, 2005.  Plaintiff appealed that denial. In response to that appeal, on April 29, 2005, the Department did agree to issue a permit for a May 1, 2005 parade, but not on Fifth Avenue.  The route approved by the Department, and taken by Plaintiff, was from Union Square Park to Beth Israel Hospital to First Avenue to 25th Street to Second Avenue to 14th Street to University Place back to Union Square Park.

32.     In the last seven years Plaintiff has applied for permits to conduct five parades -- all of which have taken place. The City has issued permits to Plaintiff for the May 1, 2005 parade from Union Square Park to 25th Street and back, a March 8, 2003 parade on Broadway from Union Square to Washington Square Park, a December 9, 2000 parade from 96th Street and Broadway to Adam Clayton Powell Boulevard and 137th Street, and a February 28, 1998 parade from Broadway and 42nd Street to First Avenue. Plaintiff's request for a May 1, 2004 parade on 42nd Street was withdrawn.

33.     The Police Department has allowed Plaintiff to conduct at least twenty demonstrations and rallies in 2003 and 2004.

    34. The Parks Department has issued fourteen permits for rallies in City parks to plaintiff since May 2004.

Dated:  New York, New York
     August 5, 2005

            MICHAEL A. CARDOZO
            Corporation Counsel of the City of New York
            Attorney for Defendant
            100 Church Street
            New York, New York  10007
            (212) 788-0822

          By: _____
            VIRGINIA WATERS (VW-9723)
            Assistant Corporation Counsel